COURT OF APPEALS OF VIRGINIA

Present: Judges Annunziata, Lemons and Senior Judge Hodges
Argued at Alexandria, Virginia


BETTIE W. PENROD
                                          OPINION BY
v.  Record No. 0650-98-4        JUDGE WILLIAM H. HODGES
                                        FEBRUARY 2, 1999
JAMES E. PENROD


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Marcus D. Williams, Judge

        Thomas P. Mains, Jr. (Mains & Mains, L.C., on
        brief), for appellant.

        David D. Masterman (Condo & Masterman, P.C.,
        on brief), for appellee.



     Bettie W. Penrod (wife) appeals the decision of the circuit

court terminating her spousal support payments.  Wife contends

the trial court erred when it found that James E. Penrod

(husband) established that she cohabitated with a man for more

than sixty consecutive days so as to be "remarried" under the

terms of the parties' separation agreement.  Finding no error, we

affirm the decision of the trial court.

     Under familiar principles, "we construe the evidence in the

light most favorable to husband, the prevailing party below,

granting to him all reasonable inferences fairly deducible

therefrom."  Rogers v. Yourshaw, 18 Va. App. 816, 818, 448 S.E.2d

884, 885 (1994) (citation omitted).

            A separation agreement . . . is a contract
            and must be construed as such.  Where the
            agreement is plain and unambiguous in its
            terms, the rights of the parties are to be
            determined from the terms of the agreement
            and the court may not impose an obligation
            not found in the agreement itself.

Jones v. Jones, 19 Va. App. 265, 268-69, 450 S.E.2d 762, 764 (1994).  "[O]n appeal if all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court."  Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

Wife and husband entered into a property settlement agreement in December 1987 in connection with their divorce and separation.  The trial court ratified, affirmed, and incorporated the agreement into the final decree of divorce.  The court entered that decree on December 31, 1987.  In pertinent part, the agreement provided:

> 12.  The Husband shall pay to the Wife as and for her support and maintenance the sum of Five Hundred Dollars ($500) per month, commencing on the thirtieth (30th) day of the month in which this Agreement is fully executed.  The payments shall continue thereafter on the thirtieth (30th) day of each and every month until the Husband's obligation to provide child support pursuant to paragraph 11(b) ceases, at which time the amount the Husband shall pay to the Wife as and for her support and maintenance shall increase to Eight Hundred Dollars ($800) per month.  The Husband's obligation to pay spousal support is nonmodifiable as to amount and shall continue until the Wife remarries, dies, or until the Husband's death, whichever event occurs first.  For the purposes of this Agreement, the Wife shall be deemed to have "remarried" in the event she cohabits and lives with a member of the opposite sex in a sexual relationship without the benefit of marriage for a period in excess of sixty (60) consecutive days.

The underlined phrases were handwritten and initialed additions to the typed agreement. The closing phrase "or with the same individual for a period in excess of thirty (30) days during a consecutive twelve (12) month period" was crossed out.

On December 1, 1995, husband filed a motion to terminate spousal support and for restitution based on fraudulent receipt of spousal support. Husband alleged that wife committed fraud by cohabiting with Gerald Hardman. At a March 4, 1998 hearing, husband and a private investigator testified. The parties also introduced the depositions of wife, the parties' eldest daughter, and Hardman's oncologist.

The uncontested evidence established that wife lived in a house owned by Hardman in Virginia after the parties divorced. Wife relocated to Florida in 1989. Hardman moved to the same area. Wife maintained an apartment in Florida but kept "valuable" items at Hardman's home. Wife stayed at Hardman's house three or four nights a week during the period through 1995, often sleeping in the same bed. Wife could be reached by telephone at Hardman's home, not at her apartment. Wife had keys to Hardman's home. Wife displayed her family photographs at Hardman's home. One of the parties' daughters lived in wife's apartment and paid the utilities, although wife paid the mortgage. Wife and Hardman vacationed together, largely, if not entirely, at Hardman's expense.

Husband testified that wife admitted she had at least one

sexual encounter with Hardman during the parties' marriage. Wife denied ever having a sexual relationship with Hardman, although she admitted that Hardman was not seeing anyone else. In his deposition, Hardman's oncologist stated that Hardman reported having sex every two weeks in January 1994, but said the frequency had dropped to every three weeks by May 1994 following Hardman's treatment for prostate cancer. Hardman's medical file also contained a notation dated November 1994 in which Hardman reportedly told his doctor that he lived with a friend who would lose alimony if they lived together for more than sixty days, that it was a friendship only and not a sexual relationship, and that he would like his records if requested.

Wife contended that Hardman's home was larger and more secure than her apartment. She admitted that she was conscious of the restriction in the parties' agreement and denied ever cohabitating with Hardman for sixty consecutive days.

In Schweider v. Schweider, 243 Va. 245, 415 S.E.2d 135 (1992), the Virginia Supreme Court stated that "the term 'cohabit' means 'to live together in the same house as married persons live together, or in the manner of husband and wife.'" Id. at 248, 415 S.E.2d at 137. The Court further stated that "[w]hile engaging in sexual relations is a factor in determining cohabitation, '"matrimonial cohabitation" consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of

the marital relationship.'" Id. (citation omitted).  The parties' agreement in Schweider provided that spousal support would terminate upon wife's remarriage, which was defined to include "'the wife's permanent cohabitation with a male as if to all appearances they were otherwise married.'"  The evidence in Schweider proved that wife and her live-in companion purchased a home together, shared the master bedroom and closet, shared mortgage and utility expenses, and had a sexual relationship.  The trial court found that wife's permanent relationship with her companion was a matter of economic necessity and that they acted more like roommates than spouses.  The Supreme Court reversed the trial court's decision, finding that the undisputed evidence established that wife's relationship was a "remarriage" for purposes of the parties' agreement.  "We cannot conceive of what conduct the husband and the wife contemplated if that conduct did not include at least the wife's sharing a bedroom with another man for a substantial amount of time since 1988."  Id. at 250, 415 S.E.2d at 138.

In Frey v. Frey, 14 Va. App. 270, 416 S.E.2d 40 (1992), the wife had a sexual relationship with her live-in companion but maintained separate finances.  We reversed the trial court's finding that the phrase "'cohabitation, analogous to a marriage' necessarily require[d] an agreement or arrangement between the [wife and her live-in companion] . . . in regard to financial support."  Id. at 272, 416 S.E.2d at 41.  We held
that the phrase, "cohabitation, analogous to

a marriage," means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship. It involves more than living together for a period of time and having sexual relations, although those factors may be significant; "[i]t also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship."

Id. at 275, 416 S.E.2d at 43 (citations omitted).

Here, credible evidence supports the trial court's finding that wife and Hardman were involved in an ongoing relationship analogous to marriage. To a private investigator posing as a real estate buyer interested in buying Hardman's house, wife described herself as living in Hardman's house for the past four or five years. Wife admitted staying at Hardman's house three or four times a week over a period of years, sleeping in the same room and sometimes in the same bed. Wife also admitted that she kept numerous items of personalty, including clothing, at Hardman's home. Hardman and wife vacationed together, usually at Hardman's expense. Hardman gave wife gifts, including a diamond ring. While wife testified that the relationship with Hardman was not sexual, other evidence which the trial court found more credible indicated that Hardman and wife were involved in a long-term intimate and monogamous relationship. Wife admitted in her deposition that she consciously caused breaks in the time she stayed at Hardman's home because of the "sixty consecutive days" requirement in the parties' agreement. The trial court found

that wife returned to her separate apartment for a portion of each week in an attempt to circumvent the language in the parties' agreement triggering the cessation of spousal support.

A finding of "cohabitation" must be based upon evidence concerning the overall nature of the relationship, not merely a piecemeal consideration of individual factors such as its sexual or financial components.  Viewed as a whole, the trial court found that wife's long-term relationship with Hardman amounted to cohabitation and living in a sexual relationship for a period in excess of sixty consecutive days.  That finding is supported by credible evidence.  Therefore, pursuant to the parties' agreement, wife was no longer entitled to spousal support.

Accordingly, the decision of the circuit court is affirmed.

<u>Affirmed.</u>