COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Agee and Senior Judge Coleman
Argued at Salem, Virginia


FLAVIA DIAZ de TANGER

                                    MEMORANDUM OPINION* BY
v.    Record No. 2017-00-3        JUDGES SAM W. COLEMAN III
                                         AUGUST 7, 2001
WILLIAM HENRY TANGER, III


        FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  Clifford R. Weckstein, Judge

        Flavia Diaz de Tanger, pro se.

        Harwell M. Darby, Jr. (Glenn, Feldmann,
        Darby & Goodlatte, on brief), for appellee.


     In this domestic relations appeal, we decide whether the

trial judge erred by terminating the spousal support of Flavia

Diaz de Tanger, appellant, pursuant to Code § 20-109(A) for

cohabiting in a relationship analogous to marriage.  The trial

judge found that appellant was and had been habitually cohabiting

with another person in a relationship analogous to a marriage for

one year or more "since July 1, 1997."  Appellant contends that

the trial judge erred by finding that the relationship was

analogous to marriage and in terminating her spousal support

because termination was unconscionable.  She also asserts that the

trial judge erred in failing to accept into evidence certain

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

documents she proffered.  Finding no error, we affirm the trial judge's decision.

Appellant and William Henry Tanger, III, appellee, were divorced in 1981.  The parties did not enter into a property settlement or other separation agreement that would have affected spousal support.  By final decree dated November 21, 1996, the trial judge awarded appellant spousal support of $700 per month. In July 1999, appellee filed a motion to terminate spousal support on the ground that appellant had been cohabiting for a period of at least one year commencing on or after July 1, 1997 with a Mr. Pringle in a relationship analogous to marriage.  See Code § 20-109(A).  Appellant filed a motion to increase the amount of monthly spousal support.

On February 25, 2000, the trial judge heard evidence on the motions which resulted in the trial judge's termination of spousal support.  Appellant contends that the evidence fails to prove that her relationship with Pringle was cohabitation analogous to a marriage.  At the hearing, the evidence proved that appellant has lived in Pringle's residence since 1995.  Appellant's adult daughter also resided in Pringle's home for a period of two or three years.  Appellant pays Pringle no rent, and she pays no utility bills.  Appellant testified she resides in an apartment within Pringle's house that is separate from Pringle's living quarters.  Pringle and appellant testified they do not have a sexual relationship, and they do not sleep together.

-

Appellant and Pringle represented that their relationship is solely a business arrangement. Pringle, who owns his business, stated that appellant runs errands for the business and performs secretarial tasks for him. He stated that appellant also corresponds with companies he deals with in Mexico because she speaks fluent Spanish. Pringle testified that appellant is compensated for her services by living rent-free in his residence and by having limited use of one of his cars. Pringle stated that he typically rented the apartment occupied by appellant for $400 per month. Pringle's business also pays appellant's health insurance.

Appellant uses credit cards issued in Pringle's name to purchase food, to pay for her dental care, and to pay for gasoline when she drives Pringle's car. Appellant also pays her athletic club membership with Pringle's credit card. A dog belonging to appellant's daughter was housed at Pringle's residence for about five years, including several years after the daughter had left the residence. Appellant paid the dog's veterinary bills with Pringle's credit card.

Pringle testified that appellant is not required to obtain his permission before using his credit cards, but she must reimburse him for the items she purchases with his credit card. Appellant testified she reimburses Pringle in cash for the use of his credit cards, but she had no records to verify these payments.

Appellant and Pringle testified they occasionally eat meals together and have traveled together to Mexico where they stayed with appellant's family. Appellant accompanied Pringle to visit his father after the father had a stroke. Pringle accompanied appellant to visit her daughter in Connecticut when the daughter was recovering from an accident. Appellant and Pringle have traveled together to Europe several times. They testified that these trips were business trips during which they attended trade shows related to Pringle's business.

Appellant testified she does not cook or clean for Pringle. She does not launder his clothing, and she pays for her own food.

The trial judge did not believe the testimony of appellant and Pringle that their relationship was "purely and solely a business relationship." The trial judge found that "clear and convincing evidence" proved that appellant and Pringle "have habitually been cohabiting with one another in a relationship analogous to marriage for one year or more commencing on or after July 1, 1997." The trial judge stated that he specifically relied on the appearance and demeanor of the witnesses while they testified in making this finding. The trial judge also stated that, in making his decision, he considered such facts as: appellant's daughter residing at Pringle's residence for a period of time; appellant's and Pringle's visits to each other's families; Pringle providing long term care for appellant's daughter's dog; and the "extraordinary implausibility of the

-

proposition" that appellant reimbursed Pringle solely in cash while keeping no business records concerning the transactions. The trial judge found that the lack of a sexual relationship was "nearly irrelevant" to the question of whether the cohabitation was analogous to a marriage.

At the conclusion of the February 25, 2000 hearing, the trial judge reserved his ruling on the issue of whether spousal support would be decreased or terminated. On May 12, 2000, the trial judge heard evidence on the issue of whether termination of appellant's spousal support would be unconscionable.[1]

Appellee testified he earns $380 per week, and his monthly net income is $529. Appellee's adjusted income for calendar year 1999 was about $20,000. Appellee stated that his net worth is about $100,000, and he presented evidence that his monthly living expenses reflected a shortfall of several thousand dollars.

Appellant, who has a college degree in art history and Spanish literature, testified her income and expenses had not changed since 1996. In the past, appellant had been a Spanish language court interpreter, but she no longer works as a court interpreter because she failed to pass the certification test.

---

[1] The parties agreed to proceed under the terms of Code § 20-109(A) as amended and approved by the Governor on April 2, 2000. The General Assembly, in 2000, amended Code § 20-109(A) by substituting "shall" for "may decrease or" and by substituting "be unconscionable" for "constitute a manifest injustice." See 2000 Va. Acts, ch. 218.

-

Appellant stated she has no money in the bank, owns no real estate, and holds no credit cards. She testified that Pringle does not give her financial support, and she has been unable to find employment other than with Pringle. Appellant admitted that subsequent to 1996 she has made only four telephone calls in search for employment and those were to friends. Appellant testified that Pringle no longer allowed her to use his credit cards. Otherwise, she continued to live at Pringle's home under the same arrangement.

The trial judge found that appellant failed to meet her burden of proving that termination of her spousal support would be unconscionable.

At the May 12, 2000 hearing, appellant proffered a binder of documents that she asserted were relevant to the issue of unconscionability. The trial judge refused to admit the documents into evidence, ruling that all documents were either already in the record or were irrelevant to unconscionability. Appellant appeals the trial judge's rulings.

<u>TERMINATION OF SPOUSAL SUPPORT</u>

Code § 20-109(A) provides:

> Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually

-

cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable.

Appellant contended on brief and at oral argument that this Court's panel decision in Rubio v. Rubio, 33 Va. App. 74, 531 S.E.2d 612, reh'g en banc granted, mandate stayed, 33 Va. App. 440, 534 S.E.2d 336 (2000), controls this case. The panel held in Rubio that Code § 20-109 did not apply retroactively to spousal support decrees entered before July 1, 1998. Id. at 77, 531 S.E.2d at 613-14. The panel decision in Rubio was stayed pending an en banc decision. Rubio has been decided en banc and that decision vacated the panel's decision upon which appellant relies. See Rubio v. Rubio, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (2001) (en banc). Furthermore, the en banc holding in Rubio does not control or affect our decision in the present case since no spousal support agreement exists between the parties here. The Rubio decision held that the terms of the spousal support agreement controlled so that the cohabitation disqualifier in Code § 20-109(A) did not apply. Id.

In 1998, the legislature "amended and reenacted" Code § 20-109(A), adding the words "the amount or duration of any" to the first sentence. See 1998 Va. Acts, ch. 604. The Act specifically provided "[t]hat Section 20-109 of the Code of Virginia [is]

-

> . . . reenacted as follows." Id. It
> further provided "[t]hat the provisions of
> this Act shall apply only to suits for
> initial spousal support orders filed on or
> after July 1, 1998, and suits for
> modification of spousal support orders
> arising from suits for initial support
> orders filed on or after July 1, 1998." Id.

Rubio, ___ Va. App. at ___, ___ S.E.2d at ___.

Our decision is controlled by the effect of Code § 20-109(A) upon support decrees entered before July 1, 1998, the effective date of the cohabitation disqualification where no spousal support agreement exists between the parties. Significantly, the General Assembly in its 2001 session, as a result of the panel's decision in Rubio, passed Senate Bill 1014 and House Bill 2215, amending and reenacting Code § 20-109. See 2001 Va. Acts, chs. 725 and 740. The Governor signed these bills into law on March 26, 2001. Although those bills were enacted during the pendency of the present suit, they did not change the provisions of Code § 20-109 as applied to this case. Rather, the 2001 Acts of the General Assembly were clarifying and declaratory of existing law.

Furthermore, by 2001 Va. Acts, ch. 720, the General Assembly provided:

> Be it enacted by the General Assembly of
> Virginia:
>
> 1. That the Code of Virginia is amended by
> adding a section number 1-13.39:3 as
> follows:

-

§ 1-13.39:3.  Statutory construction of titles and enactment clauses.

Whenever the word "reenacted" is used in the title or enactment of a bill or act of assembly, it shall mean that the changes enacted to a section of the code of Virginia or an act of assembly are in addition to the existing substantive provision in that section or act, and are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date.

The provisions of this section are declaratory of existing public policy and law.

2.  That the provisions of this act are intended to reverse the ruling in Rubio v. Rubio, 33 Va. App. 74, 531 S.E.2d 612 (2000).

3.  That an emergency exists and this act is in force from its passage.

(Emphasis added).  This Act states plainly the legislative intent that the limitation upon application set forth in 1998 Va. Acts, ch. 604, addressed only the amendments effected by that Act and, with respect to Code § 20-109(A) applied only to the language "the amount or duration of any" that was added to the first sentence.

Moreover, both chapters 725 and 740 of the Acts of Assembly contain the following sentence after the last line of Code § 20-109(A)(ii):  "The provisions of this subsection shall apply to all orders and decrees for spousal support, regardless of the date of the suit for initial setting of support, the date of entry of any such order or decree, or the date of any

-

petition for modification of support."  Therefore, the legislature's latest revision of Code § 20-109 controls this case.  The statute makes clear that its provisions including the clarification that no time limitation relates to the forfeiture provision for "cohabitation analogous to a marriage," apply to this case.

Under familiar principles, "we construe the evidence in the light most favorable to [appellee], the prevailing party below, granting to him all reasonable inferences fairly deducible therefrom."  Rogers v. Yourshaw, 18 Va. App. 816, 818, 448 S.E.2d 884, 885 (1994) (citation omitted).

We find that the trial judge did not err in terminating appellant's spousal support award.

> [T]he phrase, "cohabitation, analogous to a marriage," means a status in which a man and woman live together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship.  It involves more than living together for a period of time and having sexual relations, although those factors may be significant; "[i]t also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship."

Frey v. Frey, 14 Va. App. 270, 275, 416 S.E.2d 40, 43 (1992) (citations omitted).  Cohabitation is also defined as "[t]he fact or state of living together, esp. as partners in life, usu. with the suggestion of sexual relations."  Black's Law Dictionary 254 (7th ed. 1999).

-

Factors relevant to the determination of whether cohabitation has been proved include: common residence, intimate or romantic involvement, the provision of financial support, and the continuity and duration of a relationship. Pellegrin v. Pellegrin, 31 Va. App. 753, 764-66, 525 S.E.2d 611, 616-17 (2000). "[A]lthough the enunciated factors provide discrete categories of evidence relevant to the issue, no one factor is determinative." Id. at 766, 525 S.E.2d at 617. "[I]t is within the province of the trial [judge] to determine what weight to accord each of the factors relevant to the matter presented." Id.

Credible evidence supported the trial judge's finding that appellant cohabited with Pringle in a relationship analogous to marriage for one year commencing on or after July 1, 1997. Appellant has lived in Pringle's residence since 1995. She receives in-kind rent, ostensibly in exchange for performing secretarial duties for Pringle. She makes no utility payments. Appellant's daughter and dog also resided in Pringle's house for several years. Appellant used Pringle's credit cards and his car for her personal use. Although she stated that she reimbursed Pringle in cash when she used his credit cards, she produced no records of those payments. Appellant and Pringle traveled together to visit their families. In addition, appellant and Pringle traveled together to Europe on several occasions. Although appellant and Pringle testified that those

-

trips were for business purposes only, the trial judge did not accept their testimony that their relationship was "purely and solely a business relationship."  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."  Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

"A finding of 'cohabitation' must be based upon evidence concerning the overall nature of the relationship, not merely a piecemeal consideration of individual factors such as its sexual or financial components."  Penrod v. Penrod, 29 Va. App. 96, 101, 510 S.E.2d 244, 246 (1999).  Viewed as a whole, the evidence supports the trial judge's finding that appellant and Pringle cohabited in a relationship analogous to marriage.

Furthermore, appellant failed to prove that termination of spousal support was unconscionable.  "[U]nconscionability is . . . concerned with the intrinsic fairness . . . in relation to all attendant circumstances, including the relationship and duties between the parties."  Derby v. Derby, 8 Va. App. 19, 28, 378 S.E.2d 74, 78 (1989) (interpreting validity of a separation agreement).

The trial judge heard evidence of the parties' financial needs and financial circumstances.  Although appellant asserts she can find no employment other than with Pringle, she has a college degree and is bilingual.  She also admitted that she had

-

made only four telephone calls to friends in her search for other employment.  Furthermore, under her arrangement with Pringle, appellant pays no rent, no utilities, no car payments, and no real estate taxes.  Pringle's business pays for her health insurance coverage.  In other words, appellant has few living expenses.

Moreover, appellee represented that his net monthly income was $529 and his adjusted income for the year 1999 was about $20,000.  Based upon the evidence presented, particularly in light of appellee's ability to pay in relation to appellant's financial needs, the trial judge did not err in ruling that the termination of spousal support was not unconscionable.

### PROFFERED EVIDENCE

At the May 12, 2000 hearing, appellant proffered documents that she contends address the issue of whether the termination of her spousal support is unconscionable.  Appellant's counsel conceded at the time of the proffer that "the majority of it is information that [appellant] has gone back and gleaned from the record . . . ."

The first document in the binder is a biographical history of appellant's family background and a history of her relationship with appellee.  In general, other materials in the binder include marriage documents, and pleadings and depositions from other lawsuits between the parties and lawsuits involving one of the parties.  The binder also includes flyers from trade

-

shows, miscellaneous newspaper articles, and miscellaneous correspondence.

The trial judge ruled that, to the extent that the documents had previously been made a part of the record, those documents were "a part of the record already."  Furthermore, the trial judge ruled that the materials were "far afield about matters that have gone on over the last thirty years or so." Concerning appellant's biographical narrative, the trial judge stated, "[U]pon a cursory look at this narrative, [it] seem[s] not to have anything to do with economic impact and seem[s] to be set forth in an effort to incline the reader against [appellee] and in favor of [appellant] . . . ."  The trial judge ruled that if he admitted the proffered materials into evidence, appellee would then be allowed to submit materials in rebuttal, and those materials would be "just as far afield and just as irrelevant as the initial material."

Evidence ordinarily is admissible if it "is both material-- tending to prove a matter that is properly at issue in the case--and relevant--tending to establish the proposition for which it is offered."  Johnson v. Commonwealth, 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986).  We find that the materials are either irrelevant and immaterial to the issue of unconscionability, or are cumulative of evidence properly before the trial judge from the testimony of the witnesses and from documents previously made a part of the record.  Therefore, the

-

trial judge did not err in refusing to admit the proffered materials into evidence.

Accordingly, the judgment of the trial judge is affirmed.

<u>Affirmed</u>.