COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Clements
Argued at Richmond, Virginia


PETER H. GOLDMANN

MEMORANDUM OPINION[*] BY
v.    Record No. 1071-02-2          JUDGE LARRY G. ELDER
                                          DECEMBER 31, 2002
LINDA M. GOLDMANN


FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

Susan C. Armstrong (Melissa Roberts Levin;
Elizabeth C. Wu; Troutman Sanders, LLP, on
briefs), for appellant.

Christopher W. McDonald (Davis & Kirby, on
brief), for appellee.


Peter H. Goldmann (husband) appeals from a ruling denying

his request under Code § 20-109(A) to terminate spousal support

he paid to his former wife, Linda M. Goldmann (wife), pursuant

to an agreement incorporated into their final decree of divorce.

On appeal, he contends the circuit court erroneously held that

support could not be terminated in the absence of language in

the parties' agreement providing that spousal support would

terminate upon wife's cohabitation for a period of twelve months

in a relationship analogous to marriage.  He also challenges the

trial court's admission of parol evidence on the issue of the

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

parties' intent in entering into the agreement. Finally, he contests the trial court's alternate holding that the evidence failed to establish wife was cohabiting in a relationship analogous to marriage and challenges subsidiary rulings on discovery and the admissibility of evidence related to husband's efforts to prove wife was cohabiting. Wife assigns as cross-error the court's refusal to compel husband's compliance with her discovery requests.

We assume without deciding that the cohabitation provisions of Code § 20-109(A) applied to the parties' agreement. We hold none of the trial court's discovery or evidentiary rulings constituted reversible error. Further, we affirm the trial court's conclusion that husband failed to prove, by clear and convincing evidence, that wife cohabited in a relationship analogous to a marriage for the requisite period of time. Thus, we affirm the court's denial of husband's request to terminate spousal support. Because we affirm the court's ruling on the cohabitation issue, we conclude the trial court's refusal to compel husband's compliance with wife's discovery request, if error, was harmless. Finally, we affirm the trial court's award to wife of less than half her attorney's fees, and we decline wife's request for an award of attorney's fees on appeal.

BACKGROUND

The parties were married on June 22, 1975.  On January 29, 1997, wife filed a bill of complaint for divorce.  The parties were divorced by final decree entered on August 21, 1998.  The final decree affirmed, ratified and incorporated a spousal support agreement of the same date (the agreement).  Neither the decree nor the agreement made any mention of whether the agreement would merge into the decree.  The agreement provided for decreasing spousal support payments until August 31, 2013, at which time no further "spousal support shall be payable."  It provided further (1) that the court retained jurisdiction over the issue of spousal support in the event of (a) husband's disability "from his present profession as an ophthalmic surgeon" and resulting qualification for disability insurance benefits or (b) a change in "the Medicare reimbursement rate for cataract surgery" and (2) that either party could request renegotiation of the agreement upon the occurrence of either of those events.

By motion of August 31, 2000, husband moved for termination or reduction of wife's spousal support.  Husband represented, "[u]pon information and belief," that "[wife] and her paramour . . . have been habitually cohabiting in a relationship analogous to marriage for one year or more commencing on or after July 17, 1997," and "have been living together and sharing

-

mortgage, utility and other living expenses" at a particular address.

The trial court ruled that the parties' agreement negated the provisions of Code § 20-109 and that the agreement could not be terminated upon proof of cohabitation. It ruled in the alternative that husband had failed to prove wife's cohabitation in a relationship analogous to a marriage.[1]

## II.

### PROOF OF COHABITATION IN A RELATIONSHIP ANALOGOUS TO MARRIAGE AND THE TRIAL COURT'S RELATED DISCOVERY AND EVIDENTIARY RULINGS

We assume without deciding the trial court erroneously concluded the cohabitation provision of Code § 20-109 did not apply to the parties' agreement but nevertheless hold the record supports the trial court's denial of husband's motion to terminate spousal support.

As set out above, husband bore the burden of proving, by "clear and convincing evidence[,] that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997." Code § 20-109(A).

---

[1] Husband challenges the trial court's admission of parol evidence regarding the parties' intent in entering into the spousal support agreement. Because we assume without deciding that the agreement was terminable upon proof of cohabitation but that husband failed to prove cohabitation by clear and convincing evidence, we need not consider whether the trial court's admission of parol evidence was error.

-

Evidence is clear and convincing if it "'produce[s] in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases.'"  Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)).

> [T]he phrase, "cohabitation, analogous to a
> marriage," means a status in which a man and
> woman live together continuously, or with
> some permanency, mutually assuming duties
> and obligations normally attendant with a
> marital relationship.  It involves more than
> living together for a period of time and
> having sexual relations, although those
> factors may be significant; "[i]t also
> imports the continuing condition of living
> together and carrying out the mutual
> responsibilities of the marital
> relationship."

Frey v. Frey, 14 Va. App. 270, 275, 416 S.E.2d 40, 43 (1992) (quoting Schweider v. Schweider, 243 Va. 245, 248, 415 S.E.2d 135, 137 (1992) (quoting Petachenko v. Petachenko, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986))) (construing phrase as used in settlement agreement).

Factors relevant in determining whether one has proved his or her former spouse "has been habitually cohabiting with another person in a relationship analogous to marriage" include (1) "whether the payee ex-spouse and that party's [alleged] paramour . . . have established and shared a common residence";

-

(2) whether their relationship is intimate, which may or may not include sexual intimacy; (3) whether the payee ex-spouse receives financial support from the alleged paramour; and (4) whether the "[d]uration and continuity of the relationship" and any other relevant factors "evidence stability and permanency." Pellegrin v. Pellegrin, 31 Va. App. 753, 764-66, 525 S.E.2d 611, 616-17 (2000).

"[A]lthough the enunciated factors provide discrete categories of evidence relevant to the issue, no one factor is determinative." Id. at 766, 525 S.E.2d at 617. A court's findings "must be based upon evidence concerning the overall nature of the relationship, not merely a piecemeal consideration of individual factors." Penrod v. Penrod, 29 Va. App. 96, 101, 510 S.E.2d 244, 246 (1999).

## A.

### RELATED DISCOVERY AND EVIDENTIARY RULINGS

Husband contends his efforts to prove cohabitation were impaired by the trial court's (1) refusal to compel discovery; (2) admission of certain evidence wife failed to provide in advance of trial; and (3) refusal to prevent wife from testifying at trial regarding issues on which she had invoked the Fifth Amendment during her deposition. For the reasons that follow, we hold the challenged rulings did not constitute reversible error.

-

## 1. Discovery

By motion for production of documents served June 28, 2001, husband sought wife's financial records for all accounts, including banking, investment and credit card accounts from June 1997 through the date of the motion. After wife's October 11, 2001 response claiming that the requested information was neither relevant nor calculated to lead to the discovery of admissible evidence, husband filed a motion to compel on November 1, 2001. However, husband did not obtain a ruling on his motion to compel until January 4, 2002, the last business day immediately before the hearing of evidence on the termination motion was scheduled to begin on January 7, 2002. That hearing had been continued previously.

Further, husband presumably had received some information concerning wife's and her alleged paramour's financial accounts in response to previous discovery rulings. By letter opinion of July 26, 2001, the trial court allowed husband to subpoena the following documents: wife's Merrill-Lynch account records from January 2000 and continuing; wife's Progressive Insurance policies from January 1999 and continuing; and wife's First Union statements from August 1, 2000, to March 26, 2001. Similarly, by orders entered October 3, 2001, the trial court allowed out-of-state subpoenas on credit card accounts with MBNA America and First USA Bank for wife and her alleged paramour,

-

respectively, for the period from January 1, 2000, through September 27, 2001.

The fact that husband had received some of the requested financial information, coupled with husband's failure to obtain a timely ruling on his broader discovery request, support the conclusion that the trial court did not abuse its discretion in denying the motion heard on the eve of trial and ruling that no further discovery would be had.  See, e.g., Rakes v. Fulcher, 210 Va. 542, 546, 172 S.E.2d 751, 755 (1970) (holding no abuse of discretion in denying discovery motion absent showing that "action taken was improvident and affected substantial rights").

## 2.  Admission of Evidence

Husband objected at trial to the court's admission of the testimony of Accountant Kent Early both because he was not identified as a potential witness until ten days before trial and because he testified, in addition, to matters unrelated to those about which he was identified as a witness.  Although husband claims unfair surprise and prejudice because he was unable effectively to cross-examine Early or offer rebuttal evidence, he did not request a recess or continuance.  Thus, we hold no reversible error occurred.  Cf. Lane v. Commonwealth, 20 Va. App. 592, 595, 459 S.E.2d 525, 527 (1995) (holding under Rule 3A:11(b)(1), which governs discovery in criminal cases, that defendant who claimed surprise but failed to request a

-

recess or continuance sought "only suppression of the truth" and could not show prejudice).

Husband also contests the trial court's admission of evidence regarding rent payments Tucker made to wife and an exhibit showing wife's current income and expenses, neither of which wife provided to husband during discovery.  We hold the admission of these items also did not constitute reversible error.  Although husband objected to admission of the exhibits, he did not request a recess or continuance for further discovery to attempt to combat any claims of prejudice.  Further, because Mr. Tucker did not testify until three weeks after wife, husband had three weeks in which to prepare a challenge to this evidence through his examination of Tucker.  See id.

When Tucker testified, husband objected to introduction of the actual documents showing Tucker paid by check because they weren't produced in discovery, but he registered "[no] objection" to the trial court's statement that it would take "judicial notice of the fact that [Tucker] paid by check," and he made no attempt to cross-examine Tucker regarding any other issues related to those payments, such as their duration.

For these reasons, we hold the trial court's admission of the challenged evidence did not constitute reversible error.

-

### 3. Privilege Against Self-Incrimination

We assume without deciding that the trial court erroneously ruled wife should be permitted to assert her Fifth Amendment privilege as "to all of the questions she was asked."

> There is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. Capitol Products Corp. v. Hernon, 457 F.2d 541 (8th Cir. 1972). The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination of the validity of the claim. . . . [T]he trial court [must] determine whether [the individual] is justified in invoking the privilege against self-incrimination with respect to each of the questions propounded . . . .

N. Am. Mortgage Investors v. Pomponio, 219 Va. 914, 918-20, 252 S.E.2d 345, 348-49 (1979). Here, the trial court ruled that "[a]lthough some of the questions [to which wife asserted her privilege against self-incrimination] do not qualify[,] it is apparent that the follow-up questions would." The trial court erroneously ruled, contrary to the requirements of Pomponio, that it "[would] not individualize the questions."

Nevertheless, husband had ample opportunity to obtain answers to these questions at the hearing on his motion to terminate support. Wife took the witness stand at that hearing and did not invoke her Fifth Amendment privilege on a single occasion. Husband objected to wife's testifying about her expenses and rent payments her alleged paramour had made to her because those records had been requested but not provided in

-

discovery.  Husband's counsel also brought out on cross-examination that wife asserted her privilege against self-incrimination "to many, many, many questions during the course of [her] deposition."  However, husband made no contemporaneous request to the court to exclude wife's testimony on issues about which she had refused to testify at her deposition, he did not ask the trial court to reconsider its ban on further discovery and did not request a continuance in which to engage in further discovery in order to avoid any harm from what he only subsequently claimed was unfair surprise.  Thus, we hold the trial court did not abuse its discretion in allowing wife to testify on issues on which she had previously invoked the Fifth Amendment.

Further, the trial court was not required to draw adverse inferences from wife's and her alleged paramour's invocation of their privilege against self-incrimination.  First, Code § 8.01-223.1 provides that "[i]n any civil action the exercise by a party of any constitutional protection shall not be used against him."  We have held that this statute allows even the moving party in a civil suit to assert her right against self-incrimination and that her doing so does not justify dismissal of her suit.  See Travis v. Finley, 36 Va. App. 189, 201-02, 548 S.E.2d 906, 912 (2001).  Thus, the trial court was forbidden to draw adverse evidentiary inferences from the fact that wife asserted her privilege against self-incrimination

numerous times during her deposition.  Further, she testified at trial subject to full examination by husband, and she did not invoke the Fifth Amendment on even one occasion.  The trial court was able to evaluate both the substance and credibility of the testimony she gave.

Second, although Code § 8.01-223.1 would not prevent the court from drawing adverse inferences against wife based on her alleged paramour's invocation of the Fifth Amendment, we are aware of no principle of law which would require the court to draw such inferences.  As husband acknowledges on brief, such an inference is permissive rather than mandatory.  Thus, we hold the trial court did not abuse its discretion in failing to draw such inferences.

B.

SUFFICIENCY OF THE EVIDENCE TO PROVE COHABITATION

Finally, we hold the evidence, viewed in the light most favorable to wife, see, e.g., Penrod, 29 Va. App. at 97, 510 S.E.2d at 244, supports the trial court's conclusion husband failed to prove, by clear and convincing evidence, that wife habitually cohabited with her alleged paramour in a relationship analogous to a marriage.  The trial court found as follows:

> Although Mr. Tucker [the alleged paramour] lives in the residence when he is in Virginia[,] he pays room and board in the amount of $350.00 per month.  That is a modest amount but seems reasonable in view of his disability income.

-

> Mr. Tucker spends a lot of time out of the residence as he pursues his avocation of sailing. He is apparently gone for extended periods of time without [wife].
>
> There [is] no commingling of assets except for a brief time when [wife's] car was jointly titled with Mr. Tucker. The court accepts the explanation that this was to obtain a handicap-parking pass.
>
> Separate bank accounts and separate credit cards are maintained by [wife] and Mr. Tucker.
>
> When Mr. Tucker is there he shares in performing household duties.
>
> Whether this is a romantic relationship or a platonic relationship is hard to determine. Certainly it is a relationship of convenience for both [wife] and Mr. Tucker. They obviously enjoy one another's company and do a lot of activities together.
>
> In a marriage both parties take on the serious responsibility together to make the relationship work. I do not find that to exist here. [Wife] is the primary caretaker and provider for the household.
>
> Based on a totality of the circumstances I do not find a relationship analogous to a marriage to have existed for a period of one year between [wife] and Mr. Tucker.

The evidence supports the trial court's findings of fact, and none of the additional evidence cited by husband requires a different result. Wife admitted to being romantically involved with Tucker in the spring of 1997. However, she said the nature of the relationship changed from romantic to platonic "[p]robably sometime in 1998" and that for the two years prior to the January 7, 2002 hearing, their relationship had been "more of a landlord/tenant relationship." She testified that they had

-

> chosen to maintain a platonic relationship
> because [they] enjoy each other's
> company[.] . . . [She] enjoy[s] being able
> to sail, which [she] cannot do by [herself],
> and Mr. Tucker is severely handicapped. And
> [she] saw an opportunity to help him have a
> higher standard of living, to live in a
> nicer environment, and to help [her],
> frankly, feel safe living . . . in a home
> alone . . . .

Although wife's son saw wife and Tucker in wife's bedroom at night "after she had gone into her room and closed the door" on perhaps five to ten occasions, they "would be fully clothed" and talking, reading or doing "day-to-day things." Wife testified that she allowed Tucker to use the bathroom in her room because of his disability and that Tucker slept either on the living room couch or in one of the upstairs bedrooms.

Tucker had considered wife's Hayes residence as his primary residence since they both moved there in the summer of 1999. However, Tucker paid wife $350 per month to cover utilities, food, automobile insurance, and whatever else Tucker might use at her home and he routinely performed "yard maintenance as part of his room and board agreement." No evidence established any other overlap in finances. In addition, although wife testified that she and Tucker sometimes traveled together, she also said Tucker was frequently absent from the Hayes residence on solitary sailing trips lasting weeks at a time.

Although wife's son testified that Tucker resided with wife and son in wife's Richmond residence before they moved to Hayes

-

in the summer of 1999, the son was unable to say for how long Tucker had resided there with them and testified only that Tucker was present on "an on and off basis." The son did not know where Tucker slept. Further, the fact that Tucker was listed as a named insured on wife's automobile policy from October 1998 to October 1999 did not compel the conclusion that Tucker regularly lived in wife's residence during that time. An insurance company representative testified that a person who is a resident of the primary insured's household or a person who regularly operates the vehicle should be named on the policy. The representative testified that no definitions existed concerning what constituted "living with the insured" or "regularly operating" the insured's vehicle and that he was not privy to wife's conversation with the agent who initiated the policy.

Tucker's testimony that the nature of his relationship with wife had not changed over time, without ever asserting what he claimed the nature of that relationship was, did not require a different result.

No evidence regarding wife's and Tucker's sailing or other trips compels the conclusion that they remained romantically involved after 1998.

Finally, the fact that wife claimed Tucker as a dependent on her income tax returns without declaring any rental income

-

did not compel the conclusion that they were cohabiting in a relationship analogous to a marriage.

## III.

### COURT'S REFUSAL TO COMPEL DISCOVERY OF HUSBAND'S CURRENT FINANCIAL STATUS

Wife assigns as cross-error the trial court's refusal to compel husband to produce information requested in discovery regarding husband's current financial status.  As wife concedes on brief, this refusal, if error, was harmless.  Husband's financial status related only to the issue of whether termination of wife's spousal support would be unconscionable.  Because we affirm the trial court's decision that husband failed to prove wife was cohabiting in a relationship analogous to a marriage, the trial court need not reach the issue of whether termination would be unconscionable.

## IV.

### ATTORNEY'S FEES

"'An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.'  The key to a proper award of counsel fees is reasonableness under all the circumstances." Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996) (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)) (other citation omitted).

-

Here, wife requested attorney's fees in excess of $13,000, and the trial court ordered husband to pay $5,750 of those fees. The evidence, viewed in the light most favorable to wife, established that husband remained gainfully employed as a ophthalmic surgeon whereas wife's vocational opportunities were quite limited. Under these circumstances, we hold the trial court did not abuse its discretion.

Wife requests an award of attorney's fees in this appeal on the ground that husband's assignments of error are supported by neither the law nor the evidence. Although we uphold the trial court's ultimate ruling, we decline to make an additional award of fees to wife and direct that the parties bear their own fees incurred on appeal.

V.

For these reasons, we hold none of the trial court's discovery or evidentiary rulings constituted reversible error. Assuming without deciding that the cohabitation provision of Code § 20-109 applies to the parties' agreement, we affirm the trial court's conclusion that husband failed to prove, by clear and convincing evidence, that wife cohabited in a relationship analogous to a marriage for the requisite period of time. Thus, we affirm the court's denial of husband's request to terminate spousal support. Because we affirm the court's ruling on the cohabitation issue, we conclude the trial court's refusal to compel husband's compliance with wife's discovery request, if

-

error, was harmless.  Finally, we affirm the trial court's award to wife of less than half her attorney's fees, and we decline wife's request for an award of attorney's fees on appeal.

<u>Affirmed.</u>