COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Haley and Senior Judge Fitzpatrick
Argued at Alexandria, Virginia


JOSEPH ANTHONY STROUD
                                                        OPINION BY
v.       Record No. 3158-05-4                  JUDGE JAMES W. HALEY, JR.
                                                       FEBRUARY 27, 2007
DEBRA LYN STROUD


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                M. Langhorne Keith, Judge

            James Ray Cottrell (David H. Fletcher; John K. Cottrell; Gannon &
            Cottrell, on briefs), for appellant.

            Richard J. Colten (James A. Watson, II; Mollie C. Barton; Colten
            Cummins Watson & Vincent, on brief), for appellee.


                                              I.

        The primary issues here for resolution are (1) whether the evidence compels the

conclusion that the terms of a property settlement agreement ("PSA") terminating spousal

support upon "cohabitation with any person . . . in a situation analogous to marriage" have been

met, and (2) if so, whether such a clause involving a relationship among persons of the same sex

is operative as a matter of law in Virginia.

        Joseph Anthony Stroud ("husband") maintains that the trial court:  (1) erred in finding

that husband had not established cohabitation by the preponderance of the evidence, and

(2) erred in finding as a matter of law in Virginia that individuals of the same sex cannot

cohabitate in a situation analogous to marriage.  We agree and reverse on these issues.

Debra Lyn Stroud ("wife") has assigned as error the trial court decision (1) to permit the introduction of evidence concerning the parties' negotiations before execution of the PSA, and (2) to deny her request for attorney's fees. We affirm on these issues.

II.

PAROL EVIDENCE RULE

The parties were divorced by decree entered April 7, 1999. That decree ratified, affirmed, and incorporated a PSA dated March 22, 1999. The PSA required husband to pay wife $4,000 per month spousal support. The PSA continued: "[T]he aforesaid payments shall end upon the death of either party, the remarriage of Wife and/or *her cohabitation with any person* to whom she is not related by blood or marriage *in a situation analogous to marriage* for a period of thirty (30) or more continuous days . . . ." (Emphasis added). Husband alleges the "person" here involved, who triggered the spousal support termination clause, was a female we identify as "Robyn."

In opening statements, wife's attorney noted that the issues in controversy included her "cohabitation with any person" and Virginia law concerning same-sex relationships. At trial, husband offered a pre-execution draft of the PSA, and testimony concerning the same. The trial court admitted both, concluding the PSA was ambiguous and such evidence, concerning "negotiations for a settlement," was admissible to discern the parties' intent in the use of the word "person" in the PSA. Wife has assigned this ruling as cross-error, maintaining the admission of the evidence violated the parol evidence rule. We disagree.

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995); see also Plunkett v. Plunkett, 271

Va. 162, 166, 624 S.E.2d 39, 41 (2006); Boedeker v. Larson, 44 Va. App. 508, 518, 605 S.E.2d 764, 769 (2004).

In Vilseck v. Vilseck, 45 Va. App. 581, 612 S.E.2d 746 (2005), we noted that, "[a]n agreement should be deemed 'ambiguous if it may be understood in more than one way,'" so long as both meanings are "objectively reasonable." Id. at 588-89, 612 S.E.2d at 749 (quoting Video Zone, Inc. v. KF&F Props., 267 Va. 621, 625, 594 S.E.2d 921, 923 (2004)).

Furthermore, "whether contract language is ambiguous is [a question] of law, not fact." Plunkett, 271 Va. at 166-67, 624 S.E.2d at 41. Thus, we review the trial court's decision on a finding of ambiguity *de novo*.

In this case, a foundational issue was whether the parties intended, by the use of the word "person" in the context of the PSA, only individuals of different sexes, or individuals of both sexes. We hold the word "person" can be understood in either way by an objectively reasonable standard and, accordingly, that word is ambiguous as it is used in the PSA.

"When the language of a contract is ambiguous, parol evidence is admissible, not to contradict or vary contract terms, but to establish the real contract between the parties . . . [and] to determine *the intention of the parties*." Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996) (citations omitted) (emphasis added). The "[u]ltimate resolution of the question whether there has been a binding settlement [agreement] involves a determination of the parties' intention[s], as objectively manifested." Synder-Falkinham v. Stockburger, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995); see also Shoup v. Shoup, 31 Va. App. 621, 625-26, 525 S.E.2d 61, 63-64 (2000).

Thus, "[t]he facts and circumstances surrounding the parties when they made the contract, and the purposes for which it was made, may be taken into consideration as an aid to the interpretation of the words used . . . ." Seaboard Air Line R.R. Co. v. Richmond-Petersburg

Tpk. Auth., 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961), cited with approval in VEPCO v. Northern Va. Regional Park Auth., 270 Va. 309, 319, 618 S.E.2d 323, 328 (2005).  Those facts and circumstances include the "preliminary negotiations between the parties and the meaning of the language used . . . ."  Bolling v. Hawthorne Coal & Coke Co., 197 Va. 554, 570, 90 S.E.2d 159, 170 (1955).  Thus, parol evidence was admissible to determine the intentions of the parties, and the meaning of the contextually ambiguous word "person," in the PSA.

Subsequent to the trial court's ruling on admissibility, husband testified that drafts of a proposed PSA "had already bounced back and forth several times [before] we finalized it on March 16th . . . and it was signed on March 22nd."  Introduced into evidence was a draft PSA in which the support termination clause read "cohabitation with a *male* in a situation analogous to marriage . . . ."  (Emphasis added).  Husband testified, "I remember scratching that out and putting in 'person,' and submitting that to my attorney, who submitted it to [wife's attorney's] office."

Likewise, relevant to interpreting the word "person" in the PSA is evidence offered by wife.  On direct examination by her counsel, wife testified as follows:

> Q.   You testified a moment ago that you don't live with [Robyn] in a relationship analogous to a marriage. Are there reasons for that?
>
> A.   Yeah.  The most important reason is the fact that I signed an agreement with [husband] in 1999 that said that I would not cohabit with *anyone* in a situation analogous to marriage for 30 consecutive days, and I was very aware of that and I kept track.

(Emphasis added).

It is long established[1] that "'[w]hen the terms of an agreement are . . . uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed . . . .'" Dart Drug Corp. v. Nicholakos, 221 Va. 989, 995, 277 S.E.2d 155, 158 (1981) (quoting O'Quinn v. Looney, 194 Va. 548, 552, 74 S.E.2d 157, 159 (1953)); Am. Realty Trust v. Chase Manhattan Bank, N.A., 222 Va. 392, 403, 281 S.E.2d 825, 831 (1981). See also Smith v. Smith, 3 Va. App. 510, 518, 351 S.E.2d 593, 598 (1986).

This uncontested evidence of the negotiations of the parties before execution of the PSA, the various drafts of the PSA, and the interpretation of the word "person" by each of the parties subsequent to its execution, makes clear that each understood at the time of execution of the PSA the word "person" in the spousal support termination provision was to include individuals of both sexes.

III.

FACTS

The evidence considered by the trial court with respect to cohabitation was essentially undisputed. That evidence included wife's written response to husband's request for admissions, a transcript of wife's deposition, a Christmas letter written by Robyn, and a stipulation of facts entered into by the parties concerning the observations of private detectives. Relevant to this opinion are also the facts that wife owned a home, and Robyn owned a home on a different street.

Responding to husband's request, wife admitted the following: (1) Robyn stayed overnight in her house "an average of 5 nights per week for a period in excess of one year"; (2) Robyn "sleeps in the same bed" with her; (3) Robyn keeps clothes in wife's bedroom closet and toiletries in wife's bedroom's bathroom; (4) she engages "in consensual sexual acts" with

---

[1] For example, see Clark v. Nunn, 66 Va. (25 Gratt.) 287 (1874), and Kidwell v. Baltimore & O. R.R. Co., 52 Va. (11 Gratt.) 676 (1854).

Robyn; (5) she and Robyn have exchanged rings; (6) she and Robyn have been on vacation trips together to Europe and places in this country, and "share accommodations" on those trips; (7) Robyn washes dishes and laundry at wife's home, possesses a key to and drives wife's car, and attends church with wife; (8) she loaned Robyn $8,000 or $9,000 without written evidence of the debt or a repayment schedule; (9) Robyn is listed as the emergency contact on applicable forms for wife, and for wife's three daughters; and (10) Robyn tells these children she loves them and purchases gifts for them.

Relevant to the above admissions is a Christmas letter, dated December 29, 2004, that Robyn sent to friends and family members. In that letter Robyn relates in detail present activities and future plans concerning the three children. She writes,

> [T]he rewards of watching three teenagers grow and mature are endless.
> On a personal note, [wife] and I are doing well. Each day presents a new parenting challenge but together we can and have both the joy and the frustrations of raising three girls. . . . [Wife] is still working in the office . . . and comes home every day with a new story. . . . When she is not working, she is busily putting food on the table, doing laundry, and making sure the pantry is stocked. We could not live without her.
> I am the most spoiled of us all! Many of you always said that I was born with a silver spoon in my mouth . . . . I like to think that I know a good thing when I find it!

At trial Robyn, on many occasions after being reminded of her answers in discovery depositions, testified as an adverse witness that: (1) "[w]hen you've been in a relationship with someone as long as [wife] and I have, I think [that being a co-parent to wife's three children is] a side part to it . . . "; (2) she considered the three children as if they were her three children because "they're the closest I'm ever going to have to having children"; (3) she acknowledged there was "an understanding of fidelity" between her and wife and viewed herself and wife "as a couple"; (4) she acknowledged that wife is "certainly someone I'm in a relationship with" and that there had been an exclusive or faithful sexual relationship between the two for "[t]hree years

- 6 -

or so maybe"; (5) she "routinely" wears the diamond ring she received from wife; and (6) she keeps "an accordion file" of her personal records at wife's house.

Robyn further admitted that, with respect to the residential property she owned, she rents the same to a woman with children for $900 per month, that her tenant paid all the utilities, that her tenant had complete use of the entire house, except for Robyn's bedroom and bathroom, for herself and "[h]er children and other guests." Robyn did not dispute any of the answers wife had submitted in response to husband's request for admissions.

Both wife and Robyn explained why they did not present themselves as a couple to the public:

> Robyn: "what I share with Debb[y] is . . . against the law in Virginia . . . [and] I am in a profession where I'm not protected by the law because of that."
>
> \* \* \* \* \* \* \*
>
> Wife: "I'm a Fairfax County public school employee and they don't exactly welcome me with open arms if I'm having a relationship of some kind with a woman."

The uncontradicted evidence, offered by both wife and Robyn, is that neither has an ownership interest in, or mortgage obligation on, the real property of the other, that they do not share bank accounts or investment portfolios, and that neither is a beneficiary of retirement benefits, established trusts, life insurance, or the will of the other.

At trial the parties entered into a stipulation as to the observations of private detectives retained by husband. That stipulation, taken from the transcript, is summarized as follows: Private detectives "placed [wife's] house under surveillance for a period of . . . 34 days . . . [from] January 18, 2005 through February 20, 2005 . . . [and Robyn] stayed overnight at [wife's] residence . . . [during that time period] with the exception of . . . four days." Further, Robyn "did not spend any appreciable time at her own house. There is the possibility that she may have

gone there to pick up mail or something, but she didn't return to her house during that period of time . . . [and if she did so] it would be immaterial to the issue at hand . . . ."

Robyn testified, with respect to the four-day interval, that she left from wife's home and was driven to the airport for a "business" trip, that she toured the University of Georgia, that wife picked her up at the airport, and that she returned directly to wife's home.

At the conclusion of this undisputed evidence and argument, the trial court stated:

> And so I keep finding myself in equipoise . . . it's cohabitation,
> analogous to a marriage, and the other, it's not cohabitation,
> analogous to a marriage, and it seems to me that's the classic
> definition of a failure to prove something by the preponderance of
> the evidence.

IV.

STANDARD OF REVIEW AS TO THE EVIDENCE

As we have noted above, the evidence in this case is essentially undisputed. In that posture:

> The findings of a trial court after an *ore tenus* hearing should not
> be disturbed on appeal unless they are plainly wrong or without
> evidence to support them. A trial court's conclusion based on
> undisputed evidence, however, does not have the same binding
> weight on appeal. Moreover, a fact finder may not arbitrarily
> disregard uncontradicted evidence that is not inherently incredible.

Schweider v. Schweider, 243 Va. 245, 250, 415 S.E.2d 135, 138 (1992) (citations omitted).

Thus, when "[n]o controverted fact was passed on by the trial court," Rinehart & Dennis Co. v. McArthur, 123 Va. 556, 567, 96 S.E. 829, 833 (1918), the trial court's "finding is not entitled to the same weight it would be accorded if reached in a factual situation upon conflicting evidence." Madbeth, Inc. v. Weade, 204 Va. 199, 202, 129 S.E.2d 667, 669 (1963).

V.

SUFFICIENCY OF THE EVIDENCE AS TO COHABITATION

In <u>Schweider</u>, the Supreme Court of Virginia stated:

> We have said that the term "cohabit" means "to live together in the same house as married persons live together, or in the manner of husband and wife." <u>Johnson v. Commonwealth</u>, 152 Va. 965, 970, 146 S.E. 289, 291 (1929). While engaging in sexual relations is a factor in determining cohabitation, "'matrimonial cohabitation' consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship." <u>Petachenko v. Petachenko</u>, 223 Va. 296, 299, 350 S.E.2d 600, 602 (1986).

243 Va. at 248, 415 S.E.2d at 137.

In <u>Pellegrin v. Pelligrin</u>, 31 Va. App. 753, 763-66, 525 S.E.2d 611, 616-17 (2000), this Court enunciated four non-exclusive factors demonstrative of the "mutual responsibilities of the marital relationship."

(1) "Common residence." <u>Id.</u> at 764, 525 S.E.2d at 616. The trial court in the instant case concluded that wife and Robyn "maintain separate residences." Yet the undisputed facts show that, at a minimum, Robyn has spent five nights a week for over a year in wife's home, keeps clothes, toiletries, and personal files in wife's home, washes her clothes and dishes in wife's home, and possesses a key to the same. Wife's home is where Robyn eats her meals. The stipulation in this case was that Robyn spent 34 consecutive days, with the exception of the four-day business trip, in wife's home, and, to the extent Robyn even went to her own property, those visits were "immaterial to the issue at hand." Even concerning the four-day interval, Robyn left from and returned to wife's house.[2] With respect to Robyn's property, the entire house, with the exception of a bedroom and adjoining bathroom, are rented to a woman who has

---

[2] As the trial court commented: "But if you're living with someone and you left on a business trip and you come back and you don't go to your apartment or house, you go right back to living with the other person, aren't you still cohabiting?"

- 9 -

full use of the same for herself, her children, and her guests. Finally, in the Christmas letter, Robyn writes that wife "comes home every day with a new story . . . ." Since wife does not stay at Robyn's, Robyn's reference to "home" can only mean wife's residence, the location where wife returns and relates a new story every day. We conclude husband has established by the preponderance of the evidence that Robyn and wife share a common residence.

(2) "Intimate or romantic involvement." Id. For five nights a week for at least a year, Robyn has slept in wife's bed in wife's home and engaged in "consensual sexual acts." Robyn testified that there had been an "exclusive or faithful sexual relationship" for "three years" and that they have exchanged diamond rings. We conclude that husband has established by the preponderance of the evidence that Robyn and wife are involved in an intimate or romantic relationship.

(3) "The provision of financial support." Id. at 765, 525 S.E.2d at 617. It is true in this case that wife and Robyn do not presently share bank accounts, investment portfolios, or the obligation on their respective home mortgages. Nonetheless, Robyn is, as we have concluded above, presently sharing a common residence with wife and one to which she contributes no financial support. To this extent, then, wife is providing financial support to Robyn. Moreover, that common residence permits Robyn to rent her property for $900 per month, with the tenant paying all utilities, and thus providing over $10,000 annual rent income to Robyn. We further note that wife lent Robyn $8,000 or $9,000 without written evidence of the indebtedness or a repayment schedule, thus providing financial support in the past. Finally, the fact that neither wife nor Robyn has provided for financial support *in futuro,* by way of retirement, insurance or estate benefits, is of no moment. We are concerned with present, not future, financial arrangements. As Robyn wrote in the Christmas letter, wife is busy "putting food on the table," and Robyn is "the most spoiled" and one who "know[s] a good thing when [she] find[s] it." We

conclude that husband has established by the preponderance of the evidence that wife is providing and has provided financial support for Robyn.[3]

(4) "Duration and continuity of the relationship and other indicia of permanency." Id. By Robyn's testimony, she and wife have been in a "long" relationship for "three years or so." She characterizes the relationship as "exclusive or faithful." In the Christmas letter Robyn recites, "Each day presents a new parenting challenge but together we can and have endured both the joy and the frustrations of raising three girls." In that letter, Robyn details the present activities of the children, plans for their futures, and expresses her joy "in watching [these] teenagers grow and mature . . . ." Robyn testified she considered herself a "co-parent" to these children, ones who are "the closest I'm ever going to have to having children." It is clear Robyn considers herself a surrogate parent to wife's children, and the evidence does not disclose any action on wife's part to diminish such a status. Wife has designated Robyn as the emergency contact for these children, as well as for herself. Robyn and wife routinely wear the diamond rings each gave the other. Wife's answers to requests for admissions did not challenge any of this factual evidence.

At trial, in response to her counsel's questions, wife only denied that she had ever entered into a "contract . . . verbal or in writing . . . [as to either] the longevity . . . or the permanency of [her] relationship" and that they had any "ceremony" marking that relationship. Despite the absence of a contract or ceremony, it is clear that Robyn and wife view their relationship as a durable, continuing, and permanent one, and one that includes the joint raising of wife's children. From these undisputed facts we conclude that husband has established by the preponderance of the evidence the requisite relationship between wife and Robyn.

---

[3] We further note that the provision of financial support is not a condition precedent to the existence of an arrangement of cohabitation analogous to a marriage. Rather, "[f]inancial support is but one of a number of factors" which may support such an analogy. See Frey v. Frey, 14 Va. App. 270, 272, 416 S.E.2d 40, 41 (1992).

In concluding husband had failed to prove the existence of a situation analogous to marriage, the trial court noted that wife and Robyn did not present themselves to the public as a couple. In so doing, that court may have relied upon *dicta* in <u>Pelligrin</u>, where it was noted that some foreign jurisdictions considered such display a factor "of a more circumstantial nature" in determining the existence of a relationship analogous to marriage. <u>Pelligrin</u>, 31 Va. App. at 766, 525 S.E.2d at 617. That being said, the testimony of both wife and Robyn makes clear why they did not present themselves to the public in general as a couple. To do so, they noted, could result in an adverse or terminal effect upon their jobs. Thus, we find the trial court's reliance on this factor in its decision unpersuasive.

Finally, we compare the evidence in the instant cause with that set forth in <u>Penrod v. Penrod</u>, 29 Va. App. 96, 510 S.E.2d 244 (1999), where a spousal support termination clause defined remarriage as cohabiting and living with a member of the opposite sex in a sexual relationship for a period in excess of sixty days. There we affirmed the trial's finding that the termination provisions had been met.

> Wife admitted staying at Hardman's house three or four times a week over a period of years, sleeping in the same room and sometimes in the same bed. Wife also admitted that she kept numerous items of personalty, including clothing, at Hardman's home. Hardman and wife vacationed together, usually at Hardman's expense. Hardman gave wife gifts, including a diamond ring. While wife testified that the relationship with Hardman was not sexual, other evidence . . . indicated that Hardman and wife were involved in a long-term intimate and monogamous relationship. Wife admitted in her deposition that she consciously caused breaks in the time she stayed at Hardman's home because of the "sixty consecutive days" requirement in the parties' agreement.[4]

<u>Id.</u> at 101, 510 S.E.2d at 246.

---

[4] Exactly as did wife in this cause. See Part II of this opinion, noting wife's testimony that she would "keep track" of the days to *avoid* the 30-day portion of the PSA.

A court's findings "must be based upon evidence concerning the overall nature of the relationship, not merely a piecemeal consideration of individual factors . . . ." Id. It is our view that the evidence supporting the trial court's decision in Penrod is substantially less compelling than the uncontradicted evidence here. Although the trial court's conclusion is to the contrary, we think the undisputed evidence establishes, as a matter of law, that wife's relationship with Robyn constituted cohabitation in a situation analogous to marriage. See, e.g., Schweider, 243 Va. at 250, 415 S.E.2d at 138. Accordingly, the conclusion of the trial court that husband failed to prove that relationship by the preponderance of the evidence is reversed.

VI.

FOR PURPOSES OF CONTRACT INTERPRETATION, MAY INDIVIDUALS OF THE SAME SEX COHABIT IN A SITUATION ANALOGOUS TO MARRIAGE UNDER VIRGINIA LAW?

The trial court was persuaded that "in Virginia, where marriage between persons of the same sex is barred -- 'cohabit' has to mean between people of the opposite sex . . . as a matter of law, in Virginia, people of the same sex cannot cohabit, and that's how the PSA was written."

In reaching this conclusion the trial court specifically relied upon a 1994 opinion of the Attorney General. 1994 Op.Atty Gen. Va. 60. There the General opined that Code § 18.2-57.2(A), which criminalizes assault and battery in a situation where the defendant and victim cohabit, is not applicable to same sex cohabitation.

Initially we note that an Opinion of the Attorney General, while entitled to due consideration, is not binding upon a court. Beck v. Shelton, 267 Va. 482, 492, 593 S.E.2d 195, 200 (2004). See also Virginia Beach v. Virginia Rest. Ass'n, Inc., 231 Va. 130, 135, 341 S.E.2d 198, 201 (1986). That being said, in this case we are concerned with a contract between a man and a woman, husband and wife, not a statute defining or to be interpreted as defining "cohabitation," which is the subject of the Opinion on which the trial court relied.

- 13 -

Such a distinction was emphasized by this Court in O'Hara v. O'Hara, 45 Va. App. 788, 613 S.E.2d 859 (2005). There, the issue was the correct standard of proof of cohabitation -- preponderance of the evidence or clear and convincing evidence -- applicable to a property settlement agreement. We held:

> Accordingly, Code § 20-109(A), and its clear and convincing burden of proof, does not apply to this case involving the enforcement of a negotiated agreement between husband and wife. Rather, because this case involves an action to enforce a contract between the parties, husband's burden was to prove by a preponderance of the evidence that wife habitually cohabited with another person in a relationship analogous to a marriage for one year or more, not to prove cohabitation by clear and convincing evidence.

Id. at 796, 613 S.E.2d at 863.

The language of the PSA also contains the phrase "analogous to marriage." A relationship "analogous to marriage" does not mean a "marriage." Rather, "analogous" is defined as "similar in some way." Webster's Dictionary 17 (Michael Agnes ed., Wiley Publishing, Inc. 2002). See also The American Heritage Dictionary of the English Language 65 (3d ed. 1992). This Court defined "similar" in Frederick Fire & Rescue v. Dodson, 20 Va. App. 440, 446, 457 S.E.2d 783, 786 (1995) (quoting Black's Law Dictionary 1383 (6th ed. 1990)):

> The word similar "is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing *but is not identical in form and substance*."

(Emphasis added).

Our analysis of the phrase "analogous to marriage" in the PSA is based upon the *factual* relationship of wife and Robyn, and explicitly does not purport to grant, or comment upon, any *legal* status of that relationship. Succinctly stated, that relationship, as established by the facts, is similar "but not identical in form and substance" to a marriage.

- 14 -

For a congruent reason, wife's reliance on brief on the provisions of Code § 20-45.2 and Code § 20-45.3 is misplaced. The former prohibits same sex marriages in Virginia. The latter prohibits same sex civil unions, partnership contracts, or other arrangements purporting to grant the privileges and obligations of marriage. As stated above, our holding in this case explicitly does not grant any legal status to the relationship between wife and Robyn.

Accordingly, neither the trial court nor this Court is required to review the relationship between wife and Robyn with respect to matters of public policy as set forth in those statutes. Indeed, wife specifically testified that she and Robyn had never entered into a "contract" with respect to their relationship, nor participated in any "ceremony" concerning the same. In short, Code §§ 20-45.2 and 20-45.3 are irrelevant to the issue here raised. Thus, we do not address their application.

In accordance with the foregoing, we hold the trial court erred in concluding that, for the purposes of interpreting the contract between husband and wife, same sex individuals may not cohabit in Virginia as a matter of law. The cause is remanded to the trial court for entry of a decree conforming to this opinion.

VII.

ATTORNEY'S FEES

Wife assigns as error the refusal of the trial court to grant her attorney's fees.

In Price v. Price, 4 Va. App. 224, 237, 355 S.E.2d 905, 912 (1987) (citation omitted), we held, "An award of attorney's fees is within the sound discretion of the court, and will not be disturbed on appeal absent evidence of abuse." See also Rowand v. Rowand, 215 Va. 344, 346-47, 210 S.E.2d 149, 151 (1974); Ellington v. Ellington, 8 Va. App. 48, 58, 378 S.E.2d 626, 631 (1989). That discretion is based upon a consideration of "the circumstances and equities of the entire case." Gamer v. Gamer, 16 Va. App. 335, 346, 429 S.E.2d 618, 626 (1993); Clayberg

- 15 -

v. Clayberg, 4 Va. App. 218, 223, 355 S.E.2d 902, 905 (1987). The trial court found the evidence "in equipoise" and that "the issue was close enough that an award of attorney's fees would be inappropriate." Though our view of the evidence differs from that of the trial court, we conclude the trial court did not abuse its discretion as to the request for attorney's fees. That conclusion, as to wife's request, is strengthened by our decision in this cause.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>