MOORE, Judge.
J.L.M. (“the former husband”) appeals from a March 5, 2008, judgment entered by the Dale Circuit Court, denying his petition to terminate his periodic-alimony obligation to S.A.K. (“the former wife”). We affirm.

Facts

The Dale Circuit Court (“the trial court”) entered a judgment on November 1, 2006, divorcing the parties on the ground of incompatibility of temperament. Among other things, that judgment required the former husband to pay the former wife $1,000 per month as periodic alimony. On June 7, 2007, the former husband filed a petition to terminate his alimony obligation on the basis that he was soon to lose his employment and that the former wife had begun cohabiting with L.B. in an “immoral sexual” lesbian rela *386 tionship.[1] The former wife filed an answer admitting to the relationship but denying all other material allegations of the complaint.[2]
On September 4, 2007, the trial court conducted an ore tenus hearing. The testimony of the parties established that the former wife’s relationship with L.B. was a motivating factor for the parties’ divorce in 2006. The former wife testified that, after the divorce was finalized, she left Daleville, where she, the former husband, and their children had resided before the divorce, to visit her parents in Missouri and to visit L.B. in Nebraska. During the former wife’s visit, L.B. lost her job and the former wife and L.B. decided to move back to Daleville. In March 2007, the former wife and L.B. moved into a rental home owned by K.B., a longtime friend of the former wife’s.
The former wife testified that she and L.B. were in an exclusive, committed relationship, which she termed a “life partnership.” She also testified that she and L.B. were not legally married but that they had exchanged “friendship rings,” that they lived together as a couple, that they slept in the same room, and that they engaged in sexual relations. The former wife further testified that she and L.B. maintained a joint checking account from which they paid household bills.
The former wife, who was 45 years old at the time of the hearing, testified that, although she graduated from college with an English degree, she had not worked full-time since 1995. She had previously worked in the postal office of a branch of the military. At the time of the hearing, the former wife was currently enrolled part-time at Troy University in an effort to obtain a teaching certificate, which she estimated would take two years, and occasionally she worked as a substitute teacher. The former wife testified that, at the time she and L.B. moved back to Alabama, L.B. was receiving unemployment benefits from the State of Nebraska. The former wife also testified that, in lieu of paying rent, K.B. had allowed her and L.B. to make improvements to the house. She testified further that the only other income she has is the $1,000 per month periodic-alimony payment and a $600 per month property-settlement payment she receives from the former husband. The former wife also testified that she was not eligible for educational financial aid because of her income history.
The former husband testified that the company for which he worked had been sold and that he had been offered continued employment only if he moved to Virginia. Because he did not want to move, he had declined the offer. As a result, his employment was scheduled to end on September 30, 2007. The former husband did not testify as to his future employment plans or to the effect his job loss would have on his overall income.
*387 The former husband testified that he sought to have his periodic-alimony obligation terminated because he did not believe the former wife was making a good-faith effort to find employment and because he did not want to “pay for their existence,” referring to the former wife and L.B. The former husband acknowledged that he knew of the former wife’s relationship with L.B. at the time of the divorce but that he believed the circumstances had changed since that time because the former wife was now cohabiting openly with L.B. and the two were “all but married.”
On October 5, 2007, the trial court entered a judgment reducing the former husband’s periodic-alimony obligation from $1,000 to $500 per month. The former husband filed a postjudgment motion objecting to the failure of the trial court to terminate completely his alimony obligation based on the former wife’s living arrangements and lifestyle choices. The trial court granted the motion on January 8, 2008, entering an order that contained the following:
“So long as [the former wife] cohabi-tates in an illegal relationship with a member of the same sex, alimony shall be terminated pending further orders of the Court. If the [former wife] is not cohabitating in an illegal relationship with a member of the same sex, alimony shall continue.”
The trial court then set the case for the taking of additional testimony on the issue.
On February 19, 2008, the trial court conducted a second ore tenus hearing. The former wife, who was the only witness to testify at that hearing, stated that, immediately before Thanksgiving 2007, she had received a letter from an unnamed source advising her of the illegality of her relationship with L.B. According to the former wife, based on that letter, L.B. had moved back to Nebraska and the former wife remained in KB.’s rental house. The former wife testified that, although L.B. was no longer cohabiting with her, they remained in a committed relationship and they continued to talk with one another over the telephone. She also testified that L.B. had visited her for one week in late January 2008 and that, during that visit, she and L.B. had resumed their sexual relationship.
The former wife testified that, other than the payments she receives from the former husband, her only income comes from substitute teaching and substitute bus driving. The former wife testified that she might move to St. Joseph, Missouri, to try to find work in the post office and that, if she does move, she plans to continue her relationship with L.B., who would be living only 120 miles away in Beatrice, Nebraska.
On March 5, 2008, the trial court entered a judgment reinstating the former husband’s periodic-alimony obligation of $1,000 per month. The judgment further provides that periodic alimony will terminate if and when the former wife cohabits with a member of the same or the opposite sex or if the court otherwise orders termination.

Issue

The former husband argues that the trial court erred in failing to terminate his alimony obligation once it found that the former wife was cohabiting with L.B. in a committed lesbian life partnership that the former husband characterizes as a criminal and immoral union contrary to the public policy of this state.

Standard of Review

At trial, the parties did not present conflicting evidence regarding the sa *388 lient facts pertinent to the issue before this court.
“ ‘ “[W]hen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts.” Craig Constr. Co. v. Hendrix, 568 So.2d 752, 756 (Ala.1990).... “ ‘[O]n appeal, the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.’ ” Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869, 871 (Ala.1999) (quoting Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997))....'
“Moss v. Williams, 822 So.2d 392, 394-95 (Ala.2001).”
Downs v. Downs, 978 So.2d 768, 770-71 (Ala.Civ.App.2007).

Analysis

Section 30-2-55, Ala.Code 1975, provides, in pertinent part:
“Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex.”
By its plain terms, § 30-2-55 requires a court to terminate periodic alimony upon proof that the former spouse receiving alimony is “living openly or cohabiting with a member of the opposite sex.” (Emphasis added.) When the legislature uses language that is plain and unambiguous, there is no room for judicial construction; instead, the statute should be applied as written. Ex parte T.B., 698 So.2d 127, 130 (Ala.1997). Courts may not improve a statute, but may only expound it. Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1045 (Ala.1991).
“ ‘It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala.1997).’ ”
Alabama Dep’t of Envt’l Mgmt. v. Legal Envt’l Assistance Found., Inc., 973 So.2d 369, 377 (Ala.Civ.App.2007) (quoting De-Kalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala.1998)).
Section 30-2-55 cannot reasonably be read as applying to an ex-spouse receiving alimony who is living openly or cohabiting with a member of the same sex. See Phillip M. Longmeyer, Note, Look on the Bright Side: The Prospect of Modifying or Terminating Maintenance Obligations Upon the Homosexual Cohabitation of Your Former Spouse, 36 Brandeis J. Fam. L. 53, 57-58 (Winter 1997-1998) (concluding, based solely on the plain language of § 30-2-55, that “Alabama ... provide[s] for the automatic termination of maintenance upon the heterosexual cohabitation of the maintenance recipient”).
“If, in fact, the legislature intended the statute to allow modification on the finding of the alimony recipient’s cohabitation with a person of either sex, ... it is the duty of the legislature, rather than *389 the courts, to amend the statute.”[3]
Van Dyck v. Van Dyck, 262 Ga. 720, 722, 426 S.E.2d 853, 854-55 (1993) (holding that statute using “opposite sex” terms did not permit modification of alimony when former spouse is living in meretricious relationship with person of the same sex). In the present case, applying the statute as written, § 30-2-55 does not require the termination of alimony in a case in which an ex-wife who is receiving alimony is living openly and cohabiting with another woman with whom she is engaged in a committed lesbian lifetime partnership. See People ex rel. Kenney v. Kenney, 76 Misc.2d 927, 352 N.Y.S.2d 344 (N.Y.Sup.Ct.1974) (statute terminating alimony upon ex-wife’s habitually living with another man and holding herself out as man’s wife held inapplicable to case in which ex-husband alleged ex-wife was engaged in homosexual relationship with another woman).
The former husband points out that sexual conduct between two persons of the same sex violates the criminal laws of this state. See § 13A-6-65, Ala.Code 1975; and Ex parte J.M.F., 730 So.2d 1190, 1196 n. 5 (Ala.1998) (noting that § 13A-6-65, Ala.Code 1975, was specifically altered “so as ‘to make all homosexual conduct criminal’ ”).[4] He also notes that Alabama law, specifically the Alabama Marriage Protection Act, § 30-1-19, Ala.Code 1975, recognizes marriage as “inherently a unique relationship between a man and a woman,” § 30 — 1—19(b); prohibits same-sex marriages, § 30-l-19(b), (d), and (e); and acknowledges the public policy of “encouraging, supporting, and protecting” marriage between a man and a woman. § 30-1-19(b). The former husband further cites caselaw classifying certain homosexual conduct as a crime of moral turpitude. See Horn v. State, 49 Ala.App. 489, 491, 273 So.2d 249, 250 (Crim.App.1973); see also Ex parte H.H., 830 So.2d 21, 26-37 (Ala.2002) (Moore, C.J., concurring specially) (cataloguing the numerous instances in which homosexuality and homosexual conduct are declared immoral and illegal under state and common law). The former husband argues that, in light of the foregoing concerns, it is unjust to compel him to “abet” his former wife’s criminal conduct by subsidizing her illicit relationship with his money through the payment of alimony. The former husband urges this court to prevent that perceived injustice by *390 recognizing as a rule of law that alimony is terminated once a recipient former spouse enters into a homosexual relationship.
In general, the purpose of alimony is “to preserve, insofar as possible, the economic status quo of the parties as it existed during the marriage even though the marriage is judicially terminated.” Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980) (citing Orr v. Orr, 374 So.2d 895 (Ala.Civ.App.1979)). In particular, “[t]he purpose of periodic alimony is to provide for the current and continuous support of the spouse.” Mullins v. Mullins, 475 So.2d 578, 579 (Ala.Civ.App.1985) (citing Dees, supra). Periodic alimony is completely a creature of legislative design. See Oliver v. Oliver, 431 So.2d 1271, 1276 (Ala.Civ.App.1983) (“Divorce was not a common law right. It is purely statutory. The power to award alimony is also purely statutory.”). If the legislature believes that the purpose of providing alimony is overcome by the immoral or illegal conduct of the recipient, it may so provide. See Ivey v. Ivey, 378 So.2d 1151, 1152 (Ala.Civ.App.1979) (“What the legislature giveth, it may taketh away.”). However, no matter the strength of the public policy, this court may not assume the role of the legislature and create laws, even if they would be consistent with that policy. Siegelman, supra.
At any rate, we reject the former husband’s argument that he is being forced to abet the former wife’s criminal conduct and to subsidize her relationship. The alimony payments are payable to the former wife based on her need for financial support, see Kluever v. Kluever, 656 So.2d 887, 889 (Ala.Civ.App.1995), not as income earmarked to facilitate her homosexual lifestyle. The former wife testified that, except for occasional income from substitute teaching and substitute bus driving, her alimony, which amounts to $12,000 a year, and a $600 per month property-settlement payment are her sole sources of income. The former husband offered no evidence indicating that the former wife is using her alimony for anything other than the payment of her ordinary living expenses.
Finally, the former husband argues that the trial court’s judgment impermissibly requires him to monitor his former wife’s living arrangements to assure that she remains entitled to alimony. However, the former husband does not explain how his position differs in any material respect from the position of a paying former spouse who seeks to terminate periodic alimony on the basis of the receiving former spouse’s cohabitation with a member of the opposite sex. “Under § 30-2-55, a trial court may terminate alimony upon petition and proof that the spouse receiving the alimony ‘is living openly or cohabiting with a member of the opposite sex.’ ” Taylor v. Taylor, 550 So.2d 996, 997 (Ala.Civ.App.1989). A paying former spouse may vigilantly protect his or her own financial interests by regularly checking on the receiving former spouse’s living arrangements, but § 30-2-55 does not require the paying former spouse to do so. Similarly, in this case, the trial court’s judgment does not require the former husband routinely to investigate the former wife’s living arrangements; rather, the steps he takes to gather the necessary evidence to protect his own financial interests are left entirely to his discretion.
Because we are convinced that the trial court did not err for any of the reasons asserted by the former husband, we affirm the trial court’s judgment.
AFFIRMED.
THOMPSON, P.J., concurs in the result, without writing.
*391 PITTMAN and THOMAS, JJ., concur in the result, with writings.
BRYAN, J., dissents, without writing.

. The former husband also petitioned to modify the custody and visitation provisions of the 2006 divorce judgment. The trial court rescinded paragraph 9 of the divorce judgment, which stated: "Neither the [former husband] [n]or the [former wife] will have members of the opposite sex or members of the same sex in their respective homes while exercising custody or visitation with the children for the purpose of having extra-marital relations or contact.” The trial court did not alter the joint-custody or visitation provisions in the divorce judgment. The former husband raises no issues regarding the trial court’s actions in regard to those claims, however.

. The former wife also filed a counterclaim to obtain physical custody of the parties’ children. The trial court impliedly denied that counterclaim by leaving the joint-custody provisions of the 2006 divorce judgment unaltered. The former wife did not appeal that decision.

. We note that statutes from other states with different language than § 30-2-55 have been construed to mandate the termination of alimony upon the recipient former spouse's cohabiting with a member of the same sex, whether engaged in a homosexual relationship or not. See In re Marriage of Weisbruch, 304 Ill.App.3d 99, 103, 710 N.E.2d 439, 442, 237 Ill.Dec. 809, 812 (1999) (construing statute premising termination of alimony on "cohabiting^] with another person on a resident, continuing conjugal basis”); Kemp v. Green, (CS-98-04630, Dec. 3, 1999) (Del.Fam.Ct.1999) (not reported in A.2d) (construing statute defining cohabitation as "regularly residing with an adult of the same or opposite sex, if the parties hold themselves out as a couple ....”); Garcia v. Garcia, 60 P.3d 1174, 1175 (Utah Ct.App.2002)(applying statute terminating alimony on proof that recipient spouse is "cohabitating with another person”). See also Stroud v. Stroud, 49 Va.App. 359, 365, 641 S.E.2d 142, 145 (2007) (language of property settlement ending alimony upon cohabitation by recipient former spouse "with any person ... in a situation analogous to marriage” applied to ex-wife’s relationship with live-in girlfriend).

. A similarly worded Texas statute was struck down as unconstitutional in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), prompting Alabama's attorney general to concede that § 13A-6-65 is unconstitutional " 'to the extent that it applies to private, legitimately consensual anal and oral sex between unmarried persons.' ” Doe v. Pryor, 344 F.3d 1282, 1288 (11th Cir.2003). However, § 13A-6-65 has not been declared unconstitutional by any court.