UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien and Russell
Argued at Lexington, Virginia


MARK LOWELL GOBBLE

                                        MEMORANDUM OPINION* BY
v.       Record No. 0791-18-3       JUDGE MARY GRACE O'BRIEN
                                             FEBRUARY 12, 2019
KATHRYN SUE ELMORE GOBBLE


FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Charles N. Dorsey, Judge

Frank K. Friedman (Erin B. Ashwell; Michael P. Gardner; Woods
Rogers, PLC, on briefs), for appellant.

James J. O'Keeffe (Aaron B. Houchens; Johnson, Rosen &
O'Keeffe, LLC; Aaron B. Houchens, P.C., on brief), for appellee.


Mark Lowell Gobble ("husband") appeals an order denying his motion to terminate spousal

support to his former wife, Kathryn Sue Elmore Gobble ("wife"). He contends that the court erred

by (1) holding that wife was not cohabiting in a relationship analogous to marriage; (2) limiting its

consideration to wife's behavior shortly before trial because the post-nuptial agreement required

termination of support upon a showing of cohabitation in a relationship analogous to marriage for

one year, without reference to when that year occurred; (3) making factual findings that were plainly

wrong and without evidence to support them; and (4) denying his motion for sanctions based on

wife's spoliation of evidence.

In two assignments of cross-error, wife argues the court erred by (1) not requiring husband

to prove cohabitation by clear and convincing evidence; and (2) denying her request for attorney's

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

fees. For the following reasons, we affirm the court's denial of husband's motion to terminate spousal support and wife's request for attorney's fees.

BACKGROUND

In determining whether the court erred in denying husband's motion to terminate spousal support, we consider the evidence in the light most favorable to wife, the prevailing party on the issue below. Wright v. Wright, 61 Va. App. 432, 448 (2013). Husband and wife married on August 5, 1989, separated on May 6, 2006, and divorced on July 25, 2007. The divorce decree, which incorporated the parties' post-nuptial agreement, ordered husband to pay $4,500 per month in spousal support, subject to judicial modification upon a showing of a material change in circumstance. The decree further provided:

> Pursuant to Code § 20-109, 1950, as amended, [husband's] obligation to pay spousal support to [wife] shall end automatically at the time of [husband's] death, [wife's] death, or [wife's] remarriage, and is presumed to end upon [wife's] *habitual cohabitation with another person in a relationship analogous to marriage for one year or more*.

(Emphasis added).

After the parties separated, wife began an exclusive romantic relationship with Jeffrey J. Howard in 2006. In 2011, wife and Howard exchanged rings and held themselves out as engaged in public and on social media, but they did not marry. Howard testified that he considered their relationship "committed [and] monogamous," but he did not intend to marry wife. Wife agreed.

Howard left his salaried job and started his own business in 2012. The business struggled initially, but Howard testified that it was on a "self-sustaining path" by the time of trial in 2017. During the inception of the business, wife did not support Howard financially; however, she purchased gifts and groceries for him. Both Howard and wife testified that throughout their relationship, they have maintained independent financial lives, with separate checking, savings, and investment accounts. They are each responsible for their own bills.

- 2 -

Between 2012 and 2015, Howard and wife regularly ate meals together. Wife spent significantly more money on groceries than Howard; she testified that typically, she bought the food and he cooked the meals. Howard ate approximately twenty-five meals a month at wife's house. At times in their relationship, Howard has assisted wife with household chores upon her request. Wife has spent more money on the couple's joint trips. Wife and Howard both testified that they do not "keep score" on purchases, but rather share without concern for reimbursement.

When Howard and wife began dating, they lived approximately fifteen minutes away from each other. Howard subsequently moved to an apartment about a mile away from wife. In late 2013, Howard purchased a residence on property immediately behind wife's home. He built a pebble path from his house to the edge of wife's property and connected it to stepping stones leading to her house. In February 2014, wife posted the following comments on the internet at her public blog site:

> [M]y beloved [Howard] just bought the house next door!
>
> . . . .
>
> [Howard] and I have decided to be life partners, who live next door to each other. Weird I know, but it works for us. We exchanged commitment rings, we made promises to each other, and we decided to leave the Commonwealth of Virginia out of our happiness.

Additionally, in a July 2014 blogpost, wife described the backyard path as "[a] labor of love connect[ing] our two homes." She wrote:

> I love the man at the other end of the path . . . . Sometimes I lovingly send him home, giving us both the opportunity to savor our separate spaces.

After purchasing his home, Howard began extensive renovations. During this period, he kept a substantial amount of clothing and a computer at wife's home. He did not have a key to wife's house, and she did not have a key to his. Wife and Howard did not share a mortgage, and

they each remained responsible for their own taxes, utilities, maintenance expenses, and other bills associated with their respective homes.

Husband hired a private investigator to observe wife and Howard. The investigator testified that he observed the couple at various times between February 15, 2014 and December 16, 2015. The investigator reported that Howard spent fewer than twenty-five nights at wife's residence. Wife and Howard both testified that Howard did not stay at wife's residence when her extended family or her college-age child was in town. Howard stopped staying at wife's house entirely in late 2015, when he started respiratory therapy with a continuous positive airway pressure ("CPAP") machine. Wife never spent the night at Howard's home.

Husband initiated this action to terminate spousal support on February 25, 2016. Prior to trial, he filed a motion for sanctions due to spoliation because wife deleted Facebook and text messages responsive to his discovery request for "all written correspondence between [wife] and [Howard], including, but not limited to, emails, texts, social media or other online correspondence." In discovery, wife had submitted an affidavit that she did not send Facebook messages to Howard. However, documents produced by Howard indicated otherwise. At the hearing, wife testified that she forgot ever communicating with Howard in that manner. Additionally, wife admitted that she manually deleted Howard's text messages, but did so on a regular basis at the direction of her service provider, to minimize data storage. The deleted text messages were recovered during a forensic examination of wife's phone.

Following a three-day hearing, the court issued a letter opinion denying husband's motion to terminate spousal support. It found that, despite an eleven-year intimate and monogamous relationship, wife and Howard did not share a common residence and neither provided financial support to the other. The court therefore concluded that husband failed to meet his burden to establish that wife and Howard cohabited in a relationship analogous to marriage for a year or more.

The court also denied husband's motion for sanctions, finding that wife lacked deliberate intent to destroy evidence and "[a]ny missing Facebook messages or texts would not have affected the outcome of this termination case." The court denied wife's motion to increase support because she proved neither a material change in circumstances nor an increased need for additional support.[1] Finally, the court declined to award wife her attorney's fees.

ANALYSIS

Husband's first three assignments of error relate to the court's conclusion that wife and Howard were not cohabiting in a "relationship analogous to marriage for one year or more" which would result in the termination of his spousal support obligation pursuant to the parties' divorce decree and Code § 20-109(A).

Code § 20-109(A) provides, in relevant part, as follows:

> Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more . . . the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable.

The determination of whether parties are cohabiting is a finding of fact to be made by the trial judge after considering all of the evidence. O'Hara v. O'Hara, 45 Va. App. 788, 797 (2005). We afford great deference to the court's factual findings and will not disturb them unless plainly wrong or without evidentiary support. Pommerenke v. Pommerenke, 7 Va. App. 241, 244 (1988). When considering this issue, we review the evidence and all reasonable inferences in the light most favorable to the party prevailing below. See Reece v. Reece, 22 Va. App. 368, 372 (1996). "As with a jury verdict, if there is evidence to support a trial court's judgment rendered after receiving evidence ore tenus, [an appellate court] cannot simply overturn that judgment and substitute its own

---

[1] Wife did not appeal the court's denial of her motion to increase spousal support.

judgment, even if its opinion might differ from that of the trial court." Ryland v. Manor Care, Inc., 266 Va. 503, 512 (2003).

Cohabitation in a relationship analogous to marriage has been defined as "liv[ing] together continuously, or with some permanency, mutually assuming duties and obligations normally attendant with a marital relationship." Frey v. Frey, 14 Va. App. 270, 275 (1992). The Supreme Court has described cohabitation as "liv[ing] together *in the same house* as married persons live together, or in the manner of husband and wife." Schweider v. Schweider, 243 Va. 245, 248 (1992) (emphasis added) (quoting Johnson v. Commonwealth, 152 Va. 965, 970 (1929)). See also Luttrell v. Cucco, 291 Va. 308, 317 (2016) (extending cohabitation definition to same-sex relationships).

This Court articulated four factors for analyzing whether an ex-spouse has been habitually cohabiting with another person in a relationship analogous to marriage: (1) "[c]ommon residence;" (2) "[i]ntimate or romantic involvement;" (3) "provision of financial support;" and (4) "[d]uration and continuity of the relationship and other indicia of permanency." Pellegrin v. Pellegrin, 31 Va. App. 753, 764-66 (2000).

Although a trial court may determine the weight to accord each factor, proof of a common residence is a threshold requirement, without which cohabitation cannot be established. Cranwell v. Cranwell, 59 Va. App. 155, 163 (2011). We have stated that "proof of a common or shared residence does not *itself* establish cohabitation." Pellegrin, 31 Va. App. at 764 (emphasis added). However, before addressing the other three factors, a court must first determine whether the moving party has adduced evidence proving a common residence. Cranwell, 59 Va. App. at 162. Stated otherwise, if "two individuals do not share a common residence, they are not cohabiting." Id.

A couple may own separate homes yet share a common residence, and they do not need to live together on a full-time basis to establish cohabitation. See Stroud v. Stroud, 49 Va. App. 359, 374 (2007) (finding cohabitation where the couple maintained separate homes but spent an average

of five nights a week together).  When there are two residences to consider, the issue for the factfinder is whether the couple has "set up for visits [or] for living."  Cranwell, 59 Va. App. at 164.

Here, the court found that wife and Howard did not share a common residence but have separate residences.  We cannot say that this factual conclusion of the court was "plainly wrong or without evidence to support it."  Id. (quoting Code § 8.01-680).  Husband argues that the physical proximity of the houses and the path between them created a single complex sufficient to satisfy the "common residence" requirement.  However, the evidence viewed in the light most favorable to wife demonstrates that the couple maintained separate living spaces and did not "mutually assum[e] duties and obligations normally attendant with a marital relationship."  Frey, 14 Va. App. at 275.  Their residences occupy two separate parcels of real estate.  Wife and Howard were each responsible for the expenses associated with their own homes.  They did not have keys to each other's homes, and until December 2015 Howard only stayed overnight at wife's residence intermittently, less than half the time.  Further, after Howard started CPAP therapy in late 2015, he completely stopped staying overnight at wife's residence.  Wife never spent the night at Howard's house.  Howard stored clothing in wife's closets while renovating his own house and kept other belongings there sporadically.  The evidence failed to establish that wife's house was set up for Howard's daily living on a continuous basis.  For these reasons, the court did not err by holding that husband failed to prove the threshold "common residence" element for cohabitation.

Husband also asserts that the court erred by only considering the period of time immediately prior to the hearing in its determination that wife and Howard were not cohabiting for a year or more.  However, the court heard extensive evidence concerning the specifics of the relationship between wife and Howard, from its inception in 2006 until the hearing in 2017.  For example, the court reviewed social media from when the couple exchanged rings in 2011, wife's 2014 blogposts, evidence of the couple's spending habits between 2012 and 2015, and surveillance reports from

February 2014 to December 2015. Additionally, Howard testified that he stopped spending the night at wife's residence in December 2015, before husband initiated litigation on February 25, 2016. By arguing that the couple must have cohabited for more than a year at some point before the hearing, husband ignores that it was his burden to establish *when* that year occurred. Following a three-day hearing, the court issued a detailed letter opinion finding that husband failed to meet this burden. The evidence viewed in the light most favorable to wife, the prevailing party on the issue, supports the court's conclusion.

For similar reasons, we disagree with husband's assertion that the court's factual findings are plainly wrong and without evidence to support them. The evidence of cohabitation was disputed. "Conflicts in evidence present factual questions that are to be resolved by the trial court," which has the opportunity to "'evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as whole.'" Mills v. Commonwealth, 14 Va. App. 459, 468 (1992) (quoting Albert v. Commonwealth, 2 Va. App. 734, 738 (1986)). Here, the court did not ignore evidence, but rather exercised its authority to resolve factual conflicts.

Finally, husband argues that the court erred by denying his motion for the sanction of an adverse inference based on wife's spoliation of evidence. Spoliation occurs when a party on notice of litigation destroys or fails to preserve evidence in its custody, and the lack of evidence damages the opposing party's ability to prove an element of its claim. Emerald Point, LLC v. Hawkins, 294 Va. 544, 556 (2017). When material evidence is destroyed with the deliberate intent to deprive the opposing party of its use at trial, the court may impose sanctions. See id. at 558-59. Materiality in the context of adverse inferences means that the evidence is not "merely cumulative and repetitious." Neeley v. Johnson, 215 Va. 565, 575 (1975). See also Jacobs v. Jacobs, 218 Va. 264, 268-69 (1977). We review the court's ruling on sanctions for an abuse of discretion. Gentry v. Toyota Motor Corp., 252 Va. 30, 34 (1996).

Husband argues that wife's deletion of text and Facebook messages warranted the sanction of an adverse inference that the missing evidence would have been damaging to her case. However, nothing in the record – including the recovered Facebook and text messages – indicates that the missing communications would have been anything but cumulative. The court specifically held that the messages were not deleted with any "deliberate intent" to destroy evidence helpful to husband's case, and further, any spoliation that occurred was harmless. The court noted that husband had the opportunity to cross-examine wife extensively about issues regarding cohabitation, and "[a]ny missing messages or texts would not have affected the outcome of this termination case." We find that the court did not abuse its discretion in making this ruling.

Because we affirm the court's determination that husband failed to prove cohabitation by a preponderance of the evidence, we do not reach wife's assignment of cross-error that the court should have required proof by a clear-and-convincing standard. See DurretteBradshaw, P.C. v. MRC Consulting, L.C., 277 Va. 140, 142 n.* (2009) (declining to address non-dispositive assignment of error where a dispositive assignment of error is addressed). See also Kirby v. Commonwealth, 50 Va. App. 691, 698 n.2 (2007) ("[W]e seek to decide cases 'on the best and narrowest ground available' from the record." (quoting Miles v. Commonwealth, 274 Va. 1, 2 (2007))).

Finally, wife contends that the court erred in failing to award her attorney's fees. The decision to grant or deny attorney's fees is within a trial court's discretion and will not be disturbed absent an abuse of that discretion. Stroud, 49 Va. App. at 379-80. In this case, neither husband nor wife prevailed in their motions regarding spousal support. Accordingly, we find that the court did not abuse its discretion by denying her request for attorney's fees.

CONCLUSION

For the foregoing reasons, we affirm the court's judgment denying husband's motion to terminate spousal support and declining to award attorney's fees to wife.

Affirmed.